**GENERAL ATOMIC COMPANY, a partnership composed of Gulf Oil Corporation and Scallop Nuclear, Inc., a corporation, Plaintiff-Appellant,**

v.

**DUKE POWER COMPANY, a North Carolina Corporation, et al., Defendants-Appellees.**

No. 76–1152.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 14, 1977.

Decided April 8, 1977.

John D. Robb of Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M. (George T. Harris of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., and William R. Federici of Montogomery, Federici, Andrews, Hannahs & Buell, Santa Fe, N. M., on the brief), for plaintiff-appellant.

Russell Moore of Keleher & McLeod, Albuquerque, N. M. (Clarence W. Walker and Charles V. Tompkins, Jr. of Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., Raymond A. Jolly, Jr., Associate Gen. Counsel, Duke Power Co., Charlotte, N. C., and Charles L. Moore of Keleher & McLeod, Albuquerque, N. M., on the brief), for defendant-appellee, Duke Power Co.

Rogers M. Doering, New York City (Harold S. Parsons-Lewis and Margot A. Metzner, New York City, of counsel, Johnson, Paulantis & Lanphere, Albuquerque, N. M., and Simpson, Thacher & Bartlett, New York City, on the brief), for defendant-appellee, Indiana & Michigan Elec. Co.

James Snead of Ortega, Snead, Dixon & Hanna, Albuquerque, N. M. (Avern Cohn and Gerald S. Cook of Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Leon S. Cohan and Dean J. Landau, The Detroit Edison Co., Legal Dept., Detroit, Mich., and Arturo G. Ortega of Ortega, Snead, Dixon & Hanna, Albuquerque, N. M., on the brief), for defendant-appellee, Detroit-Edison Co.

Harlan Dellsy, Chicago, Ill. (Richard E. Powell and Paul M. Murphy, Chicago, Ill.,

of counsel, Isham, Lincoln & Beale, Chicago, Ill., and Poole, Tinnin, Danfelser & Martin, Albuquerque, N. M., on the brief), for defendant-appellee, Commonwealth Edison Co.

Harry L. Bigbee of Bigbee, Stephenson, Carpenter & Crout, Santa Fe, N. M., (Donnan Stephenson and Michael R. Comeau of Bigbee, Stephenson, Carpenter & Crout, Santa Fe, N. M., on the brief), for defendant-appellee, United Nuclear Corp.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

General Atomic Company here has appealed a judgment of the District Court, the effect of which was denial of General Atomic's claim that the court had jurisdiction pursuant to the interpleader statute, 28 U.S.C. Section 1335. The basis for the trial court's ruling was that plaintiff had not demonstrated that it was subject to conflicting claims by two or more defendants growing out of a single obligation of the plaintiff.

The suit was commenced by the General Atomic Company on January 10, 1976. Named as defendants were four utility companies, consisting of: Duke Power Company, a North Carolina corporation; Indiana & Michigan Electric Company, an Indiana corporation; Detroit-Edison Company, a Michigan corporation; Commonwealth Edison Company, an Illinois corporation; and also United Nuclear Corporation, a Delaware corporation. Jurisdiction was sought on each of two counts, the first for statutory interpleader, and the second by suit in the nature of an interpleader. The former claim sought to determine entitlement for each of the four utility company defendants, all of whom have contracts with General Atomic requiring the latter to supply uranium concentrates. Count II sought to determine the nature of and the entitlement to all of the parties in and to plaintiff's rights and obligations concerning the supply of uranium concentrate. This suit alleged that there were adverse claims between two or more of the defendants with respect to a quantity of uranium in which plaintiff was alleged to have some rights.

The several agreements were for the supply of uranium concentrate for the fabrication of cores for nuclear reactors for electric generating plants of the utility defendants. These contracts were made between the United Nuclear Corporation (UNC) and the utility defendants in the late 1960s and early 1970s prior to the formation of General Atomic. UNC was regarded as the source of the uranium concentrate which was to be supplied under the contracts. Thereafter, UNC assigned its rights under the so-called UNC agreements to Gulf United Nuclear Fuels Corp. which in turn assigned to General Atomic. UNC did not relinquish its duties to the utilities under the agreements.

For the purpose of gaining access to the uranium supply to permit the servicing of the contracts of the utilities, Gulf United Nuclear Fuels Corp. entered into an agreement with UNC in 1973, whereby the latter was to supply to Gulf the amounts of concentrate required in order to supply the utilities. Concentrate was to be supplied under the agreement on essentially the same terms and conditions. General Atomic succeeded to Gulf's rights and obligations under the agreement with UNC.

In recent years the price of uranium concentrates has increased substantially. UNC takes the position that it is entitled to be released from its obligations under the supply contract or that it is entitled to receive the current market prices. It is alleged that UNC and the utilities are in conflict, UNC's position being as described above, and utilities' position being that they are entitled to have the concentrates furnished at the agreed prices. UNC also demands that General Atomic indemnify it against claims by the utilities.

Further allegations describe other lawsuits in other states and the possibility of inconsistent and conflicting judgments. Despite the alleged conflicts the trial court refused to accept jurisdiction citing the

ground which is mentioned above. We in turn are called upon to decide whether the relationships and property interests suffice to confer interpleader jurisdiction.

The statute is simple enough. It declares that district courts have original jurisdiction of a civil action in interpleader filed by a plaintiff having in its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument having a value of $500 or more, or providing for the delivery or payment or the loan of money or property in such amount or value, or being under any obligation written or unwritten to the amount of $500 or more. The provision goes on to say that, first, there must be two or more adverse claimants, of diverse citizenship, who are claiming or who may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation.

Second, it requires that the plaintiff shall have deposited the money or property or shall have paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, to abide the judgment of the court, or shall have given bond in compliance with the order of the court.

Third, the statute states that such an action may be entertained, although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse and independent of one another.

The trial court considered the fatal aspect to be plaintiff's failure to show itself to be a party subject to conflicting claims by two or more defendants. We disagree with neither the action thus taken nor with the reason given. We are constrained, however, to add that this is not all that is missing if the case is to satisfy the exacting demands of the interpleader statute.

We are acutely aware that the plaintiff finds itself in a most difficult trap. We are also aware that the public interest might

well be served if all of the lawsuits could be brought together under a single roof. As the plaintiff points out, it is threatened with not only a number of lawsuits, but conflicting adjudications. The problem from our standpoint is that we must decide the case within the framework of the interpleader statute in view of the obvious limiting principle that federal courts are courts which are dependent upon Congress for the exercise of subject matter jurisdiction. The only jurisdictional offering is the interpleader statute and our decision must be made in terms of its specific criteria.

Professor Wright in his hornbook entitled Law of Federal Courts (3rd ed.), Section 74, p. 362, states that "[i]nterpleader is a form of joinder open to one who does not know to which of several claimants he is liable if he is liable at all. The Act allows him to bring the several claimants into a single action and to require them to litigate among themselves to determine which, if any, has a valid claim."

 In its early stages the interpleader jurisdiction was equitable in nature. Now, of course, it is based on statutory law and, it is plain that it lacks equitable flexibility. Since the enactment of the statute, rival claimants, at least two of whom were of diverse citizenship, have been required. It is also clear that complete diversity is unnecessary; that minimal diversity suffices. The Supreme Court has expressly recognized this in *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). One condition which appears unavoidable is the presence in the interpleader action of a stakeholder and the deposit in court of the money or property demanded by the claimants. If the stakeholder is disinterested, he is entitled to dismissal. An ancillary aspect is that suits in other states can be enjoined.

██ Our conclusion from an overview of the statute and from a reading of the cases, is that the structure of this action considered as a whole is such that it fails completely to qualify as an interpleader procedure. The property is not in the

hands of the plaintiff and thus it cannot be deposited in court and cannot be placed by plaintiff in the custody of the court. The essential aspect is that the *res* be under the control of the person bringing the lawsuit, so as to be deliverable to the registry of the court. The action is an *in rem* or *quasi in rem* suit in its nature. The court holds the property and the claimants compete in an effort to have it awarded. In the case at bar the property is not available for delivery to the court. There being no tangible or intangible property subject to the demands of the claimants, the main purpose of the interpleader action cannot be brought about. The property is thus unavailable for competitive claims.

The stakeholder, if there is one, is not General Atomic. It is United Nuclear! The latter now holds the property and adamantly refuses to deliver it unless it gets its price. This fundamental void cannot be filled. Possession of the entire supply of nuclear material and ability to bring it under the control of the court might have gone a long way toward conferring interpleader jurisdiction.

We are also, as the trial court pointed out, lacking in the element of competing claimants. The utility purchasers do not appear as competitors one with the other. Their resistance is against being relegated to interpleader with its attendant diminishing of rights against UNC and General Atomic. Whether these parties would assume a different posture if General Atomic had the material and the capability of delivering it to the court, we need not consider.

That the interpleader action is not a cure-all for every multi-party relationship is demonstrated by *State Farm Fire & Casualty Co. v. Tashire, supra.* This was a bus accident which occurred in California. The bus was shown to have collided with a pickup truck which had been moving in an opposite direction from the bus. Two of the passengers aboard the bus were killed, and thirty-three others were injured as was the bus driver and the driver of the truck. Suits filed in California state courts sought in excess of $1,000,000. Before these cases matured, State Farm Fire & Casualty Co. filed an interpleader complaint in the United States District Court for the District of Oregon. It asserted that at the time of the collision it had an insurance policy with respect to the driver of the truck providing for bodily injury liability up to $10,000 per person and $20,000 per occurrence. It paid into the court the sum of $20,000 and asked that claims against Clark, the driver of the truck, be proven up and that State Farm be discharged from further obligations under its policy. Without excluding independent lawsuits against either Greyhound or State Farm, the Court said that jurisdiction could be assumed over the $20,000 deposited. It rejected, however, the contention of the defendants that this could result in closing out all of the various suits on behalf of the numerous injured persons. And so, then, the interpleader was limited to the $20,000 fund applicable to suits against the injured truck driver.

The Supreme Court had made it plain that its view of the interpleader action was not that it could be used to solve all of the problems of multi-party litigation arising from a mass tort; that interpleader was never intended to perform the all-purpose function of a bill of peace; and specifically that it was not designed to prevent the many claimants from choosing a forum. *Tashire, supra,* at 535–37, 87 S.Ct. 1199. And so, then, the Court put to rest the proposition that by the simple expedient of filing an interpleader suit, actions filed in many jurisdictions that went beyond an action against the truck driver and its insured could be closed off.

It accordingly ordered the judgment enjoining lawsuits to be modified.

The lesson which the *Tashire* case teaches is that in the present context interpleader is a limited remedy; it is not in the nature of a bill of peace as is repeatedly stated in the opinion. The mission of this statute is to administer a limited amount of property and conflicting claims of several litigants to that property.

GAC seeks to support its theories of interpleader jurisdiction in two of this court's

interpleader cases. But it overlooks the fact that each of those cases has genuine adverse claimants seeking property, tangible or intangible, of the stakeholder-plaintiff.

In both the first and second *Holcomb* cases Aetna Life Insurance Company was the stakeholder-plaintiff while the claimants consisted of several heirs of the deceased insurance policy holder and also of beneficiaries of the policies. *Holcomb v. Aetna Life Ins. Co.*, 228 F.2d 75 (10th Cir. 1955), *cert. denied*, 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853 (1956); *Holcomb v. Aetna Life Ins. Co.*, 255 F.2d 577. (10th Cir. 1958). The heirs had asserted in state court actions that Aetna had wrongfully converted the policy holder's government bonds which had been used to pay the policy premiums. Aetna instituted interpleader actions against the heirs and beneficiaries in order to avoid being subjected to double payment for the same liability in the event both the heirs and policy beneficiaries were successful in pressing their claims against it. This created a traditional action in the nature of interpleader and this court so held. *See* 228 F.2d at 81; 255 F.2d at 579–80.

In *Northern Natural Gas Co. v. Grounds*, 292 F.Supp. 619 (D.Kan.1968), *aff'd in part, rev'd in part and remanded*, 441 F.2d 704 (10th Cir. 1971), *decision on remand*, 393 F.Supp. 949 (D.Kan.1974), *appeal pending* (No. 74–1886, *et al.*), the stakeholder-helium extraction companies had there brought six consolidated interpleader actions (two conversion and reverse condemnation suits were brought by the landowners) against generally two classes of claimant-defendants: the landowners, who owned a mineral interest in gases produced under oil and gas leases, and lessee-producers, who produced helium-bearing natural gas from the wells leased from the landowners. Both the landowners and lessee-producers there claimed against a fund consisting of money paid and to be paid by the United States to the interpleading plaintiffs for the helium-gas mixture extracted and sold by them. *See* 441 F.2d at 715. The Court held that

"[i]nterpleader jurisdiction is limited to the fund in controversy." *Id.* The landowners were entitled to participate only to the extent that they were claiming against the fund. Jurisdiction of their other claims was disallowed. *Grounds* thus emphasized the necessity for claimants to be seeking participation in property. It is clear that UNC is not a genuine claimant in this lawsuit since it is not asserting entitlement to anything that GAC has tendered to the district court.

Without UNC's participation as a genuine claimant, the prerequisite of the statute that there be adverse claimants is absent. The several utility companies are not competing among themselves as to the benefits of their independent contracts for the supply of uranium concentrate and other uranium products with GAC. They are simply interested in holding GAC to the terms of those separate contracts.

We are convinced that the case at bar is not an appropriate one for the interpleader statute. It seeks to bring a number of independent suits under one roof and does so even though the plaintiff is empty-handed. Plaintiff is really just a claimant having claims not dissimilar to those of the several utilities. It has not been demonstrated to us that the plaintiff can force the stakeholder, so to speak, to proceed with an interpleader action. This is not to say that we are blind to the serious problem created by the posture adopted by United Nuclear. It is not, however, for us to redesign the interpleader statute in order for it to accommodate this unusual lawsuit. As was said by the Supreme Court in *State Farm, supra*, the interpleader procedure is not a bill of peace capable of furnishing a tribunal in every multi-party lawsuit. It is of limited breadth and scope and it does not fit the case at bar.

Accordingly, the judgment of the district court is affirmed.