INDIANAPOLIS COLTS,
Plaintiff-Appellee,

v.

MAYOR AND CITY COUNCIL OF BAL-
TIMORE, Defendant-Appellant,

and

Capital Improvement Board of Managers
of Marion County,
Defendant-Appellee.

No. 84–1649.

United States Court of Appeals,
Seventh Circuit.

Submitted May 4, 1984.

Decided May 8, 1984.

Edwin C. Thomas, III, Bell, Boyd & Lloyd, Chicago, Ill., for defendant-appellant.

John P. Price, David O. Tittle, Martha S. Hollingsworth, Donald L. Jackson, Bingham, Summers, Welsh & Spilman, William M. Evans, Robert P. Kassing, Alan W. Becker, Bose, McKinney & Evans, Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The suit in the district court arises from the efforts of Baltimore Football Club, Inc., the owner of the Baltimore Colts professional football team, to move the team from Baltimore to Indianapolis. One of the defendants, the Mayor and City Council of Baltimore (City of Baltimore, for short), has filed a motion asking us for the following relief pending the hearing of its appeal under 28 U.S.C. § 1292(a)(1): to stay the injunction that the district court granted against its pursuing a condemnation action in Maryland against the Club, and to grant an injunction to prevent the Indianapolis Colts (as they are now called) from selling tickets or making any other preparations for playing football in Indianapolis. The City's motion raises an important issue regarding the scope of the federal statutory interpleader jurisdiction, 28 U.S.C. § 1335.

On March 28 of this year, the Baltimore Football Club signed a 20-year lease with the Capital Improvement Board of Managers of Marion County, Indiana (where Indianapolis is located) to play the Colts' home games in Indianapolis's "Hoosier Dome." That night the Club surreptitiously removed its athletic equipment and office supplies to Indianapolis. Two days later the City of Baltimore filed in a Maryland state court an action to acquire the Colts from the Club by eminent domain. The next day the Capital Improvement Board formally approved the lease that had been signed on March 28; and a week later the Club filed the present suit, an interpleader action in federal district court in Indianapolis, claiming that it was caught between the conflicting claims to the franchise asserted by the Capital Improvement Board on the one hand and the City of Baltimore on the other. The Club asked the district court to enjoin the City from proceeding with its eminent domain suit, which meanwhile had been removed from Maryland state court to federal district court on the Club's petition. The district court granted the injunction and the City has appealed, asking, as we have said, that pending its appeal the injunction be stayed and the Colts be enjoined from taking any preparatory steps toward playing football this season in Indianapolis.

In considering the City of Baltimore's requests, we must consider the relative hardships to the parties of the relief sought, in light of the probable outcome of the appeal. *Adams v. Walker*, 488 F.2d 1064 (7th Cir.1973). Therefore, if the City of Baltimore both has a good chance of winning the appeal and would be hurt more by the injunction that the district court issued than the Colts would be hurt by a stay of the injunction pending appeal, we should grant the stay. And that, as a matter of fact, describes the situation as we see it. The City of Baltimore has an excellent chance of prevailing on at least one of the grounds of its appeal, which is that this case is not within the federal courts' interpleader jurisdiction; and it is more likely to be hurt seriously by the injunction that the district court issued than the Colts are likely to be hurt seriously by a stay of that injunction.

The historical and still the primary purpose of interpleader is to enable a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party. This is done by forcing all the claimants to litigate their claims in a single action brought by the stakeholder. See 7 Wright & Miller, Federal Practice and Procedure § 1701 (1972). By expanding interpleader jurisdiction to actions "in the nature of interpleader," 28 U.S.C. § 1335(a), the federal interpleader statute has relaxed the requirement that the stakeholder be neutral and that the conflicting claims have the same origin. But it is still necessary to decide "whether the stakeholder legitimately fears multiple vexation directed against a single fund." 7 Wright & Miller, *supra*, § 1704, at p. 369. It was not a purpose of the statute that interpleader be used for forum shopping, which is the use to which it seems to have been

put here; and when an interpleader action is brought in bad faith it must be dismissed. See, e.g., *Kelly v. Raese*, 377 F.2d 263 (4th Cir.1967); cf. *New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 96 (2d Cir.1983).

▮ Although the lease with the Capital Improvement Board that is the source of the Board's claim against the Colts was signed a couple of days before the City of Baltimore brought the condemnation suit, the parties to the lease were well aware that the suit (which had been expressly authorized by the Maryland legislature) was in the works; for the lease refers to pending and prospective litigation involving the team and gives the Club a right to get out of the lease on the basis of such litigation. This escape hatch makes it highly doubtful that the Club does in fact face inconsistent obligations, a prerequisite to interpleader jurisdiction. But if it does, then it does by virtue of its own actions; it deliberately created the situation in which it had, or appeared to have, potentially conflicting obligations depending on the outcome of the eminent domain suit. By signing the lease when it did, the Club evidently was trying to set the stage for filing an interpleader action in Indianapolis so that it could sue the City there without having to get personal jurisdiction over it in Indiana. See *Kent v. Northern California Regional Office of American Friends Service Comm.*, 497 F.2d 1325, 1328 (9th Cir.1974). Assuming there was diversity of citizenship between the Club and the City of Baltimore (the Club is incorporated in Delaware, and alleges that it shifted its principal place of business from Baltimore just before the City filed its eminent-domain action—an allegation challenged by the City in the action that has been removed to federal district court in Maryland, but unnecessary to resolve here), the Club could not get personal jurisdiction over the City in Indiana, and therefore could not have brought the present suit without relying on the federal interpleader statute, which provides for nationwide service of process. (The required diversity to maintain the interpleader action, see 28 U.S.C. § 1335(a)(1), is diversity between the claimants, the City of Baltimore and the Capital Improvement Board, see *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203–04, 18 L.Ed.2d 270 (1967); *New York Life Ins. Co. v. Connecticut Development Authority, supra*, 700 F.2d at 95 n. 5, and they are diverse.) Anyway the Club appears to have no claim against the City on which a suit of any sort could be founded; it merely wants a stay of the City's eminent-domain suit. It could ask the court in Maryland where the suit is pending for such a stay, of course, but evidently it thinks its request will be more favorably received in Indiana. But it has to get into court in Indiana, and it can do that only by way of the interpleader jurisdiction. We cannot imagine any other motive for this action.

▮ The Colts are in that exceptionally common situation where their ability to perform a contract may be imperiled by a lawsuit; and they just want to shift the lawsuit to their new home ground, by using the interpleader statute to get personal jurisdiction of the plaintiff there, which they could not otherwise get. This is not what the statute was intended for. See *Kelly v. Raese, supra*, where an interpleader action was dismissed because the court found that the purpose was not to avoid multiple liability but to take advantage of the nationwide service of process provision in the interpleader statute.

▮ The Colts did not file this action until after they had removed the City of Baltimore's eminent-domain suit to federal district court in Maryland. So they have a federal forum in which to litigate *that* dispute, and they have no dispute with the Capital Improvement Board. At least they have such a forum unless the Maryland district court holds that the Club was actually a citizen of Maryland when the suit was brought; but if the Club is not of different citizenship from the City, it is not entitled to get into federal court on the basis of the diversity of citizenship between the City and the Capital Improvement

Board of Marion County unless the Club has a genuine interpleader action. The fact that the Club filed the present suit and moved to enjoin the City of Baltimore from proceeding with the action in Maryland indicates that, now that the Club has relocated to Indianapolis, it would prefer to proceed in a federal district court there than in Baltimore. But it was not to foster forum shopping that the interpleader jurisdiction, with its unusual feature of nationwide service of process that forces defendants to defend in jurisdictions where they could not otherwise be sued, was created.

If this is a proper interpleader action, we foresee immense expansion in the use of the device. A company is sued for violating the antitrust laws, and treble damages are sought. If the company loses the suit, its assets may not be sufficient to enable it to pay off a bond indenture. It would rather litigate the antitrust suit in its home court, and it therefore interpleads its bondholders and the antitrust plaintiff. This would not be a proper invocation of the interpleader jurisdiction and no more is the present case.

■ Another way to state our objection to the maintenance of this case under the interpleader statute is that there is no stake, even assuming that the lease created, in good faith, an unconditional obligation in the Club. The problem is not that there is no fund in a conventional sense; the stake can be a thing as well as a sum of money—can even, we may assume, be an athletic team. But while the City of Baltimore is indeed asserting a right to take over the team through the eminent-domain power, the Capital Improvement Board is not. It is just a lessor of a stadium. It did not buy the Colts by signing a lease that obligates the Colts to play all their home games in the Board's stadium for 20 years, or for that matter 2000 years. If the Colts' owner breaks the lease, the Board may be able to get damages for breach of contract; it will not be able to take over the football team. It is not a mortgagee to whom the team has been pledged as collateral, or the assignee of the team's owner. See *General Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 57 (10th Cir.1977).

■ Nevertheless we need not, in advance of hearing the City's appeal, conclude definitively that this suit was brought in bad faith and should be dismissed. It is enough for present purposes that such a conclusion seems quite likely on the basis of the voluminous briefing papers that have been filed with us in support of and opposition to the City's motion. It is also quite likely that the City will be seriously harmed by not being able to proceed with its eminent-domain action in Baltimore. The attempt to acquire a football team by eminent domain is unusual, to say the least; we do not suggest it will or should succeed. But every day that passes with the Colts ensconced in Indianapolis makes it less likely that the City of Baltimore, even if it won its eminent-domain suit, could actually reconstitute the Baltimore Colts. And no irreparable harm would accrue to the Colts just from having to defend the suit in Maryland.

■ The balance of hardships would be much closer if we were to grant the City of Baltimore's second request, which is for an order enjoining the Colts from preparing to play football in Indianapolis until this appeal is heard. Such an order, if granted, would wreck the Colts' upcoming football season, imposing immense financial losses on owners and players alike. But if the interpleader suit was improper, we cannot see what basis the City of Baltimore has for asking us to keep the Colts from playing football in Indianapolis. Such relief is not a proper incident to a suit that should not have been brought. It is properly ancillary to the suit in Maryland, about which we know no more than what we have said in this opinion. If the City of Baltimore wants to bring an ancillary proceeding of some kind in Indiana to protect its right to get an effective remedy in its eminent-domain suit in Baltimore, it is free to do so (of course, we shall not prejudge the success of any such effort). But this is not that suit.

The stay of the injunction granted by the district court against the City of Baltimore's proceeding with its suit in Maryland is GRANTED. The other relief requested by the City is DENIED.