AMERICAN FAMILY MUTUAL INS. CO., Plaintiff,

v.

Timothy C. ROCHE, et al., Defendants.

No. 92–C–539.

United States District Court, E.D. Wisconsin.

Aug. 24, 1993.

**1242**

Jan M. Schroeder, Peterson, Johnson & Murray, S.C., Milwaukee, WI, for plaintiff.

Robert Steven Wilson, Sycamore, IL, for defendant Roche.

Stephen N. Needham, Lichtsinn & Haensel, Milwaukee, WI, for defendants Rebecca Grimm, Robert Grimm, Estate of Michael R. Grimm, Jr., Kathryn Grimm, & Michael Grimm, Sr.

## DECISION AND ORDER

RANDA, District Judge.

This statutory interpleader action comes before the Court on cross-motions for summary judgment and on plaintiff's motion for default judgment against defendant Roche. The summary judgment motions raise issues concerning the proper scope of federal interpleader. Upon review, the Court grants defendants' motion for summary judgment and

dismisses the case. Accordingly, plaintiff's motion for default judgment is denied as moot.

## FACTUAL BACKGROUND

Taking plaintiff's allegations as true for purposes of this motion, the following facts are assumed. On January 13, 1990, the plaintiff, American Family Mutual Insurance Co. ("American Family"), issued a policy of automobile insurance to the defendant, Timothy C. Roche ("Roche"), which policy included liability coverage. (Complaint at ¶ 8.) On May 7, 1990, American Family sent Roche a statutory notice of termination, notifying Roche that his coverage would terminate on July 13, 1990. (Complaint at ¶ 9.) On or about July 22, 1990, Roche was involved in a car accident with the defendants, Michael R. Grimm, Sr., Rebecca Grimm, Michael R. Grimm, Jr. and Robert Grimm (collectively, "the Grimms"), in the State of Illinois. Michael Jr. died from injuries received in the accident. (Complaint at Ex. C, ¶ 5.) Michael Sr., Robert and Rebecca also suffered injuries in the accident. (Id.)

The Grimms, all Illinois residents, filed a wrongful death and personal injury action against Roche, a Wisconsin resident, in Cook County, Illinois. (Complaint at Ex. C.) American Family, a Wisconsin insurer, is not a party to the Illinois action because Illinois does not have a direct action statute. However, American Family is providing Roche a defense in that matter under a standard reservation of rights. (Complaint at ¶ 18.) That lawsuit is still pending. While it was pending, American Family brought this interpleader action against Roche and the Grimms (including the Grimms' daughter, Kathryn Grimm, who apparently was not involved in the accident), seeking two forms of relief. First, American Family seeks to enjoin any actions by the Grimms or Roche against the proceeds of Roche's policy and to "interplead" all such claims into this action. (Complaint at ¶¶ 14–21.) Second, American Family seeks a declaratory judgment that the policy was not in effect at the time of the accident and therefore American Family has no duty to defend Roche in the Illinois action

and no liability under the policy. (Complaint at ¶¶ 22–26.)

The Grimms filed a motion for summary judgment to dismiss this action on grounds of subject matter jurisdiction. They argue that the interpleader statute requires at least two adverse claimants to the fund (the insurance proceeds) who are also diverse to each other. Because the Grimms are the only potential claimants to the fund, and because they all reside in Illinois, the Grimms argue a lack of jurisdiction. American Family filed its own motion for summary judgment, arguing that jurisdiction is proper. American Family argues that both Roche and itself can be considered claimants or potential claimants to the fund, and that each are adverse and diverse to the Grimms.

## LEGAL ANALYSIS

"The admirable remedy of interpleader has been in existence for over 600 years." 7 Wright, Miller & Kane, *Federal Practice and Procedure*, § 1701 at 483 (1986). The remedy developed in the equity courts and is governed by equitable principles. *Lummis v. White*, 629 F.2d 397, 399 (5th Cir.1980), *rev'd on other grounds, Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982). "Interpleader enables a person holding a fund to compel persons asserting conflicting claims to that fund to adjudicate their rights to the fund in a single action." *Id.* Early on, in what is now referred to as the "strict" bill of interpleader, courts applied various "classic" limitations upon the availability of interpleader, greatly restricting its use:

> 1. The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded; 2. All their adverse titles or claims must be dependent on or be derived from a common source; 3. The person asking the relief—the plaintiff—must not have or claim any interest in the subject-matter; 4. He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them, in the position merely of a stakeholder.

7 Wright, Miller & Kane at 485, quoting 4 Pomeroy, *Equity Jurisprudence*, (Symons 5th ed.), 1941, § 1322, at 906: Seeking to expand interpleader relief, however, "many courts honored these strictures in name only". Id. One of the significant departures from the classic limitations on interpleader was development of the "bill in the nature of interpleader", which did away with the requirement that the stakeholder be neutral and disinterested:

> Under the traditional strict bill of interpleader, the stakeholder did not assert an interest in the fund or contest the extent of the liability. The stakeholder simply brought the money or property into court and was discharged, leaving the rival claimants to litigate their entitlement to the fund. Because the strict bill of interpleader did not afford relief to all stakeholders, courts gradually developed the bill in the nature of interpleader. Through a bill in the nature of interpleader, a stakeholder that asserted an interest in the fund or denied liability to one or more of the claimants called "upon the court to exercise its jurisdiction to guard against the risks of loss from the prosecution in independent suits of rival claims."

*Lummis*, 629 F.2d at 400. (Citations omitted.)

Another significant development in the history of interpleader was enactment of the first federal interpleader statute in 1917. This first statute basically codified the historical interpleader remedy developed by the equity courts, but expanded federal jurisdiction by including nationwide service of process. 7 Wright, Miller & Kane at 486–87. Subsequent amendments of the statute added the bill in the nature of interpleader, expanded the group of persons eligible to seek interpleader, and abolished the first two of the four "classic" limitations described above. Id. at 487–490. Such is the shape of the statute today. The statute, however, is not the only form of federal interpleader available. Enactment of the statute and its subsequent amendments "left open the question whether the federal courts retained their historic equity jurisdiction over interpleader actions based on general federal question jurisdiction or diversity of citizenship between the plaintiff-stakeholder and the de-

fendant-claimants." Id. at 491. That question was resolved in 1938, when Rule 22 of the Federal Rules of Civil Procedure was promulgated to provide federal interpleader proceedings in those cases which may not meet the requirements of the interpleader statute but which nonetheless meet the general jurisdictional requirements applicable in federal court (*i.e.,* federal question, diversity of citizenship, amount-in-controversy, etc.) [1] Thus, today we have "statutory interpleader" and "rule interpleader". The primary distinction between the two lies in their jurisdictional prerequisites.[2] Here, jurisdiction is premised on statutory interpleader, the current version of which reads as follows:

### § 1335. Interpleader

(a) The district courts shall have original jurisdiction *of any civil action of interpleader or in the nature of interpleader* filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, *or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more,* or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) *Two or more adverse claimants, of diverse citizenship* as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) *the plaintiff has deposited such money or property* or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, *or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper,* conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335. (Emphasis supplied.)

As can be seen from the highlighted sections above, "[t]he interpleader statute ... provides that the district courts have original jurisdiction over civil actions of interpleader brought by any corporation having issued a policy of insurance in the amount of $500.00 or more if two or more adverse claimants of diverse citizenship claim to be entitled to the money and plaintiff has deposited the money

---

**1.** Rule 22. Interpleader

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of crossclaim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C. §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.

**2.** Statutory interpleader requires only "minimal diversity" between two or more adverse claimants, regardless of the stakeholder's citizenship. Rule interpleader requires either a federal question or complete diversity between the plaintiff-stakeholder and the defendant-claimants. Statutory interpleader requires an amount-in-controversy of only $500. In diversity cases, rule interpleader requires an amount-in-controversy exceeding $50,000. Statutory interpleader allows nationwide service of process. Rule interpleader only allows service within the territorial limits prescribed by Rule 4. Statutory interpleader restricts venue to any district in which one or more of the claimants resides. Rule interpleader allows venue in the district where the plaintiff resides, where all the claimants reside, or where the claim arose. 7 Wright, Miller & Kane at 497–99.

in court or has given bond in lieu of deposit." *Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.*, 695 F.Supp. 469, 472 (C.D.Cal. 1987). Here, the policy limits involved are well above the jurisdictional amount ($100,-000 per person—$300,000 per occurrence) and American Family posted a bond in that amount ($300,000) with the Court. The remaining question is whether there are two or more claimants to the policy benefits or proceeds who are both adverse and diverse to each other. The Court must also decide "whether the stakeholder legitimately fears multiple vexation directed against a single fund." *Indianapolis Colts v. Baltimore*, 733 F.2d 484, 486 (7th Cir.1984), quoting 7 Wright & Miller, *Federal Practice and Procedure* § 1704 at 369 (1972). That is, "[i]t was not a purpose of the statute that interpleader be used for forum shopping ... and when an interpleader action is brought in bad faith it must be dismissed." *Id.*, at 486–87.

## I. ADVERSITY AND DIVERSITY

As for diversity, the statute "has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). "Minimal diversity" is also determined without regard to the stakeholder's citizenship; that is, without regard to the circumstance that the stakeholder and one of the claimants may be co-citizens. *See generally, Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 70–73, 60 S.Ct. 44, 47–48, 84 L.Ed. 85 (1939); 7 Wright, Miller & Kane at 540–45. As for adversity, "[t]o satisfy [this] requirement for an interpleader action, the interpleader claims must be adverse to the fund and adverse to each other." *Industrial Bank of Washington v. Techmatics Technologies, Inc.*, 763 F.Supp. 629, 634 (D.D.C. 1991). That is, the dispute cannot involve money generally, as most disputes do, but must involve a specific fund of money and competing claims for that fund.

The foregoing principles narrow the possible bases for the Court's jurisdiction. Assuming for purposes of the motion that the combined value of the Grimms' claims exceeds the policy limits of $300,000,[3] each Grimm would be adverse to the others because each would be competing for portions of a fund that is not large enough to satisfy them all.[4] *See generally, Pan American Fire & Casualty Company v. Revere*, 188 F.Supp. 474, 481 (E.D.La.1960); 7 Wright, Miller and Kane at 513. But while each would be adverse, they would not be diverse, because all of the Grimms reside in Illinois. Or assume that Roche settles with one of the Grimms, using his own funds, and submits an indemnification claim under the

---

**3.** This assumption is not at all clear from the current record. The Illinois suit includes a wrongful death action on behalf of Michael Grimm, Jr. (the deceased) and his family. (Complaint at Ex. C, ¶¶ 5–7.) A preliminary review of Illinois' wrongful death statute indicates that, unlike Wisconsin, Illinois does not limit the amount which can be awarded in a wrongful death action. *See, Illinois Revised Statutes 1991*, Ch. 70, §§ 1 et seq. The case also includes separate personal injury actions on behalf of Michael Sr., Robert and Rebecca Grimm for the injuries they suffered in the accident. (Complaint at Ex. C, ¶¶ 5–7.) On the current record, however, there is no evidence as to the seriousness of those injuries. Unless the Court is simply to assume that the wrongful death action is valued at or near $300,000, there is little basis for finding that the competing claims will exceed the fund available. This is especially true where the prayer for relief in the Illinois action only seeks damages "in excess of" $75,000 for all of the claims combined. (Id. at 2–4.)

**4.** It does not matter that none of the Grimms' claims have yet been reduced to judgment. In *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 531–33, 87 S.Ct. 1199, 1203–05, 18 L.Ed.2d 270 (1967), the U.S. Supreme Court held that insurance companies need not wait until persons asserting claims against their insureds have reduced those claims to judgment before invoking the benefits of federal interpleader. Holding otherwise would mean that "the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy." *Id.*, at 533, 87 S.Ct. at 1205.

policy for a portion of the proceeds (which, of course, would compete with the claims of the non-settling Grimms). Assume also that American Family denies Roche's claim. Under those circumstances, even if American Family and Roche could be considered adverse, they cannot be diverse because both are Wisconsin residents. Thus, jurisdiction is proper only if American Family and the Grimms (who are diverse) can be considered adverse to each other, or if Roche and the Grimms (who are also diverse) can be considered adverse to each other. Neither group can be so considered.

### 1. American Family and the Grimms

■ Since the interpleader statute was amended to expressly include "bills in the nature of interpleader", it is clear that the fact that American Family denies any liability whatsoever, and is therefore not a neutral or disinterested stakeholder, cannot destroy this Court's jurisdiction. And since the Supreme Court's decision in *Treinies,* it has also been clear that the citizenship of American Family, as a stakeholder, cannot destroy jurisdiction. What remains unclear, however, is whether the citizenship of American Family, as an *interested* stakeholder, can *create* jurisdiction under the statute. American Family claims it can. It reasons that by denying liability it has become a "claimant" to the fund both adverse and diverse to the Grimms. The Supreme Court has not yet answered this interesting question:

> But the *Tashire* opinion does not end all controversies concerning when statutory interpleader may be invoked. One question is whether jurisdiction exists if the named claimants are all cocitizens but are of diverse citizenship from an interested stakeholder. For example, suppose a New York stakeholder, denying liability for a $1000 stake, attempts to interplead two New Jersey claimants. *Tashire* does not answer the question whether jurisdiction may be asserted; it simply makes clear that treating an interested stakeholder as a claimant for jurisdictional purposes will not deprive the court of jurisdiction as long as at least minimal diversity exists between the claimants initially named as defendants. On the other hand, implicit in

that conclusion is the notion that the statutory requirements must be satisfied by the originally named claimants; the stakeholder's citizenship should not be considered for purposes of destroying or creating jurisdiction under Section 1335.

7 Wright, Miller & Kane at 545–46.

The few courts that have addressed the issue favor letting an interested stakeholder's citizenship create jurisdiction under the statute. In *Lummis v. White,* the 5th Circuit considered an interpleader action stemming from the death of Howard Hughes. Among the many other claimants to the Hughes estate, Texas and California both claimed Hughes as a domiciliary and asserted the right to levy state death taxes on his estate. If both states were allowed to levy death taxes, the total of those taxes and the federal estate tax could have exceeded the value of the entire estate. A jurisdictional problem arose, however, because neither state nor federal governments can be considered citizens of a state for diversity purposes. Thus, jurisdiction existed only if the interested stakeholder—the estate administrator who denied that any death taxes were owed—could be considered an adverse claimant for diversity purposes. The 5th Circuit said he could:

> This circuit has not decided whether the citizenship of an interested stakeholder may be considered for purposes of establishing the minimal diversity required by section 1335. In the *Treinies* decision in 1939, the Supreme Court held that the citizenship of a stakeholder who did not claim any interest in the deposited fund did not destroy diversity for a strict bill of interpleader although the stakeholder and one of the claimants were citizens of the same state. The Court did not discuss whether the citizenship of an interested stakeholder similarly is irrelevant for purposes of diversity. A stakeholder who brings a bill in the nature of interpleader asserts a claim to the fund that is adverse to that of the defendant claimants. Because section 1335 requires only that two or more adverse claimants be of diverse citizenship, we hold that the citizenship of an interested stakeholder may be consid-

ered for purposes of establishing diversity under section 1335.

*Lummis,* 629 F.2d at 403. (Citations omitted.)

In *Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.,* a California district court considered an interpleader action stemming from the forced closing of a California bank. The FSLIC was appointed receiver for the bank, and in that capacity brought suit against the bank's directors and officers ("D & O's") for breach of their fiduciary duties and other fraud-related claims. The D & O's tendered the defense of the matter to the bank's D & O carrier, who denied coverage and filed an interpleader action naming the FSLIC and the D & O's as defendants. A jurisdictional dispute arose because the FSLIC, as a federal agency, is not a citizen of any state for diversity purposes and all of the D & O's were citizens of California. Citing *Lummis,* the court held that the citizenship of the insurer-stakeholder could be used to satisfy jurisdiction:

This result is implied in *Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 70–72, 60 S.Ct. 44, 47–48, 84 L.Ed. 85 (1939), where the Court held that the fact that a *disinterested* stakeholder was a co-citizen of one defendant did not make the federal court's exercise of its diversity jurisdiction under the Interpleader Act unconstitutional. The Court reasoned that it should examine the citizenship of the parties between whom there was a real controversy to determine whether the dispute was "between citizens of different states" as required by Article III, § 2. Since the plaintiff in *Treinies* had no interest in the stake, the controversy was between defendant/claimants of different states and the constitutional requirement, which was held to be of minimal diversity only, was satisfied. The Court thus implied that the citizenship of an *interested* stakeholder would *not* be irrelevant in determining whether diversity existed among adversaries. By extension, then, diversity could be established if an interested stakeholder and one or more of the defendant/claimants were diverse.

*Mt. Hawley,* 695 F.Supp. at 473.

Legal commentators are split on the issue. Wright, Miller & Kane, despite their belief (expressed above) that *Tashire* implicitly renders the citizenship of the stakeholder irrelevant, argue in favor of jurisdiction based upon the modern trend to broaden the jurisdiction of federal courts in interpleader actions:

However, there are some persuasive arguments why relief should be available under the statute. The declining importance of the classic limitations on interpleader and the acceptance of jurisdiction based on minimal diversity under the statute are evidence of a trend toward the broadest availability of interpleader relief. Allowing statutory interpleader in the situation under discussion would be consistent with that trend.

7 Wright, Miller & Kane at 546. Moore, however, concludes that the citizenship of the stakeholder—whether interested or disinterested—is never considered for jurisdictional purposes:

The actual course of decision has been to ignore the holding in *Treinies* that in a strict interpleader the citizenship of the stakeholder is irrelevant, and to ignore the implication that in an action in the nature of interpleader, it is relevant. Instead, it has been held that whether the stakeholder is disinterested or interested, his citizenship is always considered in an action under § 1332 and Rule 22(1) [rule interpleader], and never considered in an action under § 1335 [statutory interpleader].

Thus, the fact that the stakeholder is diverse from the claimants named as defendants does not bring the action within § 1335, although the stakeholder is also a claimant of the fund.

3A *Moore's Federal Practice,* § 22.09[1].

The judicial tendency to expand the jurisdiction of federal interpleader relief when issues such as these arise is somewhat understandable. Because § 1335 developed in equity and is a piece of "remedial legislation", courts generally construe it liberally with an eye towards doing justice. *See generally, Lummis,* 629 F.2d at 399, n. 6; *Pan American Fire & Casualty Co. v. Revere,* 188 F.Supp. 474, 483 (E.D.La.1960); *MFA Mutu-*

*al Insurance Co. v. Lusby,* 295 F.Supp. 660, 665 (W.D.Va.1969). Nevertheless, this Court disagrees with other courts and commentators who would hold that American Family's citizenship can be used to create interpleader jurisdiction. It does so because the question at issue involves the Court's subject matter jurisdiction. As with all such questions, we begin with the fundamental premise that federal courts are courts of limited jurisdiction. The issue must be decided "within the framework of the interpleader statute in view of the obvious limiting principle that federal courts are courts which are dependent upon Congress for the exercise of subject matter jurisdiction." *General Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 56 (10th Cir.1977). The issue must also be decided with the knowledge that "[t]he Supreme Court ha[s] made it plain [in *Tashire* ] that its view of the interpleader action was not that it could be used to solve all of the problems of multiparty litigation arising from a mass tort; that interpleader was never intended to perform the all-purpose function of a bill of peace; and specifically that it was not designed to prevent the many claimants from choosing a forum." *Id.,* at 57. Quite the contrary, "interpleader is a limited remedy" designed to "administer a limited amount of property and conflicting claims of several litigants to that property." *Id.*

Consistent with these principles, our first consideration must be the language of the statute itself. The statute requires "[t]wo or more adverse *claimants,* of diverse citizenship...." 28 U.S.C. § 1335(a)(1). (Emphasis supplied.) What is a claimant? In the insurance context, a claimant is one who is "claiming or may claim to be entitled to ... any one or more of the benefits arising by virtue of ... [the] policy...." Id. Can American Family truly be said to claim an entitlement to the benefits of its own policy? Such a position might be defensible if American Family was exercising its subrogation rights or some other "benefit" inuring to itself. But liability coverage? That is a benefit inuring to its insured and those injured by the insured. As such, Roche may claim an entitlement to the benefit. The Grimms may claim an entitlement to the benefit. But American Family cannot.

American Family denies the existence of the benefit. The same applies if we focus, as American Family does, on the "fund" at issue, *i.e.,* the $300,000 proceeds of the policy. As stated earlier, "[t]o satisfy the adversity requirement for an interpleader action, the interpleader claims must be adverse *to the fund* and adverse *to each other." Industrial Bank,* 763 F.Supp. at 634. By denying that coverage exists American Family has clearly stated a claim that is adverse to the Grimms, but how is it adverse to "the fund"? American Family owns "the fund". It seeks to preserve its ownership of "the fund". Indeed, from American Family's perspective, "the fund" does not even exist. It is simply a fiction used as an analytical reference for its potential liability to the real claimants, a liability which American Family denies, and which would in any event be paid out of its general assets. There is no separate, distinguishable "fund" of dollars which American Family now seeks to obtain and add to its own general fund of dollars. The two are the same.

This is not to say that the use of this fiction in the insurance context is not helpful for other purposes. In fact, at times it is not even a fiction. If American Family admitted coverage and deposited the proceeds of the policy with the Court (strict interpleader), an actual fund would exist. But for those instances where coverage (or liability generally) is denied, the equity courts and Congress developed the bill in the nature of interpleader. The bill in the nature of interpleader essentially refers to the plaintiff's potential liability as a "fund" so that there appears to be something tangible for the claimants to claim. Use of the fiction for these purposes makes sense. The threat of multiple litigation from diverse claimants towards a single fund (which is what federal interpleader was created to remedy) is present regardless of the stakeholder's position vis-a-vis his overall liability. But here, as between American Family and the Grimms, while there may be a threat of multiple litigation towards a single fund, the threat is from non-diverse claimants. American Family faces, at worst, multiple Illinois actions. That threat can be addressed by a state interpleader action in

Illinois, or perhaps a well-placed motion for consolidation. *See e.g., Illinois Compiled Statutes, Ch. 735, 5/2–409, 2–1006.* Seen in this light, allowing federal interpleader under these circumstances sanctions the use of the statute for mere forum-shopping, which was never its intended purpose. *See generally, Indianapolis Colts,* 733 F.2d at 486–87. In this regard, it must be remembered that "[t]he need for interpleader is separate, of course, from the need for a federal forum." 3A *Moore's Federal Practice,* § 22.09[1] at fn. 8.

While there are those who might view the foregoing considerations as "metaphysical objection[s] at best", 7 Wright, Miller & Kane at 547, it is a metaphysics compelled by the language of the statute itself, which is the sole source of this Court's jurisdiction. It is also a metaphysics which has (as does all good metaphysics) sound practical · consequences. The federal interpleader statute is best viewed as a unique exception to the federalist notion, rooted in exceedingly good policy, that federal courts are courts of limited jurisdiction. That is, the interpleader statute allows a federal court to provide a federal remedy in a dispute which is almost always going to be governed by state law and which is often based on nothing more than a "minimal diversity" between the disputing parties. This unique exception can be justified in those situations where the only way for the dispute to be finally decided by a

single decision emanating from a single court is to allow a federal forum with nationwide service of process.[5] But because alternatives exist, allowing federal interpleader relief based solely on the stakeholder's citizenship sets a dangerous precedent. It would permit a Rule 22 interpleader action absent the necessary jurisdictional amount and thereby alter the prerequisites of federal jurisdiction by judicial decision.[6]

### 2. Roche and the Grimms

In the alternative, · American Family argues that Roche can be considered a claimant to the benefits or proceeds of the policy adverse to the Grimms. Because he is a Wisconsin resident and the Grimms are Illinois residents, Roche is also diverse. But before the Court accepts these facts as a basis for jurisdiction, it must look closely at the two scenarios under which Roche could be viewed as a "claimant" to the policy proceeds: (1) as an insured seeking liability coverage under the policy for any judgments obtained by the Grimms in the Illinois action; or (2) as an insured who settled with one or more of the Grimms in the Illinois action, using his own funds, and seeking indemnification under the policy in competition with the claims of the non-settling Grimms. Neither case triggers the Court's jurisdiction.

#### (a) Roche's coverage claim.

The lack of jurisdiction under this scenario is relatively clear. One simply has

---

5. This is not to say that every situation posing such a dilemma triggers federal interpleader. Rather, such dilemmas explain or justify the use of federal interpleader when the statutory requirements for jurisdiction are otherwise met. This is an important point. As explained in section 2(a), *infra,* it appears that American Family may not be able to have the coverage issue decided by a single court. But federal interpleader was not created to decide coverage disputes. It was created to decide disputes regarding the allocation of the insurance fund once coverage is admitted or found. Thus, a corresponding coverage dispute does not destroy jurisdiction, but it does not create it either. There must first be a genuine dispute between two or more diverse claimants regarding the proper allocation of the insurance fund. We do not have that here.

6. As indicated earlier, "interpleader under Rule 22 must be premised either on federal question jurisdiction [which is rare] or on diversity of

citizenship between the stakeholder and the claimant." 7 Wright, Miller & Kane at 547. Thus, rule interpleader anticipates and addresses the very jurisdictional basis asserted here. Rule interpleader also ·requires, however, an amount-in-controversy exceeding $50,000. Given the foregoing, even Wright, Miller & Kane acknowledge that "[s]ince Rule 22(1) was promulgated to provide an interpleader remedy in the type of case under discussion, it would be reasonable to conclude that the amount in controversy limitation on rule interpleader should be given effect and that statutory interpleader ought not be artificially extended." *Id.* at 546. But these same commentators decline to follow where reason leads, seduced instead by certain "persuasive arguments" to the contrary and the "evidence of a trend toward the broadest availability of inter-· pleader relief." *Id.* But resting the subject matter jurisdiction of federal courts upon "persuasive arguments" and generalized "trends" is a risky business at best. It is also unconstitutional.

to remember that § 1335 requires both "adversity" and "diversity" between the jurisdiction-creating claimants. Clearly a coverage claim by Roche to enforce the policy and force American Family to pay the Grimms would be "diverse" to a claim by the Grimms to do the same. But how could it be considered "adverse"? Roche's claim would simply seek the same relief as the Grimms' claim, *i.e.*, payment to the Grimms. It would seek no relief for Roche himself that would conflict with or diminish a claim by the Grimms. As such, the claims would not be adverse and could not sustain interpleader jurisdiction.

The Court recognizes, of course, the dilemma which probably played a large part in American Family's decision to file this interpleader action. That is, because Illinois does not have a direct action statute, American Family is not presently a party to the Illinois lawsuit and cannot raise the coverage issue therein. It also appears that the Illinois court may not allow American Family to intervene in that lawsuit for purposes of raising the coverage issue. *See generally, Home Insurance Co. v. Lorelei Restaurant Co.*, 83 Ill.App.3d 1083, 39 Ill.Dec. 304, 307, 404 N.E.2d 895, 898 (1980); *Hurley v. Finley*, 6 Ill.App.2d 23, 126 N.E.2d 513, 515–16 (1955); *contra, Johnson v. Cape Industries, Ltd.*, 91 Ill.App.3d 192, 46 Ill.Dec. 586, 589–90, 414 N.E.2d 470, 473–74 (1980). Furthermore, while American Family could bring a separate declaratory judgment action in Illinois against the Grimms, or in Wisconsin against Roche, it appears that a decision rendered in either state on the coverage issue would not be collateral estoppel or res judicata in the other. *See generally, Insurance Co. of North America v. Cape Industries, Ltd.*, 138 Ill.App.3d 720, 93 Ill.Dec. 186, 189, 486 N.E.2d 287, 290 (1985); *Kichefski v. American Family Mutual Ins. Co.*, 132 Wis.2d 74, 78–81, 390 N.W.2d 76 (App.1986). Thus, American Family may have to defend separate coverage actions in Wisconsin and Illinois and face the possibility of one state finding coverage and the other not. But, as stated earlier, "the Supreme Court ha[s] made it plain that its view of the interpleader action was not that it could be used to solve all of the problems of multi-party litigation arising from a mass tort; that interpleader was never intended to perform the all-purpose function of a bill of peace; and specifically that it was not designed to prevent the many claimants from choosing a forum." *General Atomic*, 553 F.2d at 57, citing *Tashire*, 386 U.S. at 535–37, 87 S.Ct. at 1205–07. And as the 10th Circuit has made clear, interpleader jurisdiction turns upon the interpleader statute and not upon the equities of a given procedural dilemma:

> We are acutely aware that the plaintiff finds itself in a most difficult trap. We are also aware that the public interest might well be served if all of the lawsuits could be brought together under a single roof. As the plaintiff points out, it is threatened with not only a number of lawsuits, but conflicting adjudications. The problem from our standpoint is that we must decide the case within the framework of the interpleader statute in view of the obvious limiting principle that federal courts are courts which are dependent upon Congress for the exercise of subject matter jurisdiction. The only jurisdictional offering is the interpleader statute and our decision must be made in terms of its specific criteria.

*General Atomic*, 553 F.2d at 56.

Thus, because Roche's coverage claim would not be adverse to a coverage claim by the Grimms, there is no jurisdiction under the interpleader statute. While American Family makes a strong *equitable* argument for interpleader jurisdiction under these facts, it fails to make a strong *statutory* argument.

### (b) Roche's indemnification claim.

■ Jurisdiction under this scenario might, at first blush, seem proper. If Roche settles with some (but not all) of the Grimms, he will have a claim for indemnification under the policy. That claim, depending upon the amounts at issue, may or may not compete with the claims of the non-settling Grimms. Assuming they compete, these claims would clearly be adverse and diverse, thereby creating jurisdiction.

The problems with this position are obvious: No indemnification claim exists. Roche has not settled with any of the Grimms. Nor is there any showing that serious settlement

negotiations have begun or that Roche has the financial resources to even consider settling with the Grimms. Even if Roche settles with some of the Grimms, there is no showing that Roche's indemnification claim, combined with the claims of the non-settling Grimms, would exceed the policy limits. (See footnote 3, *supra.*) As the 7th Circuit stated in the *Indianapolis Colts* case, "it is ... necessary to decide 'whether the stakeholder legitimately fears multiple vexation directed against a single fund.'" *Indianapolis Colts,* 733 F.2d at 486. The current record does not support such fears. At best the record shows a hypothetical and theoretical adverse claim which may never exist and which—even materialized—may not be adverse. The Court acknowledges that the statute only requires adverse and diverse claimants who "are claiming *or may claim* to be entitled to such money or property,...." 28 U.S.C. § 1335(a)(1). (Emphasis supplied.) The Court also acknowledges that courts and commentators have focused on this statutory language as support for allowing interpleader actions when the adverse claims are "speculative or remote", or "have not been asserted", or "have not been reduced to judgment." 7 Wright, Miller & Kane at 523. To extend this language to non-existent hypothetical claims (which may not be adverse even if they eventually do exist) is to manufacture jurisdiction for the sake of doing equity. It would allow any potential interpleader plaintiff to obtain a federal forum in any case where an adverse/diverse claim is at least abstractly conceivable, which is to say, it would allow a federal forum in virtually all cases. More importantly, it again contradicts the venerable notion that federal interpleader is a limited remedy available in courts of limited jurisdiction. For the reasons expressed above, the matter must be dismissed.

NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment is denied;

2. Defendants' motion for summary judgment is granted and the case is dismissed upon its merits and with prejudice; and

3. Plaintiff's motion for default judgment is denied as moot.