CNA INSURANCE
COMPANIES, Appellant,

v.

WATERS, Lemuel T., Jr. and Trawick,
Brenda, Appellees.

No. 90–1491.

United States Court of Appeals,
Third Circuit.

Argued Nov. 29, 1990.

Decided Feb. 7, 1991.

Marcella J. Schell (argued), John R. McHaffie, LaBrum & Doak, Philadelphia, Pa., for appellant.

Barry A. Rosen (argued), Neff & Associates, Philadelphia, Pa., for appellees.

Before BECKER, NYGAARD and ALITO, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal by plaintiff CNA Insurance Companies ("CNA"), which has sought to invoke the jurisdiction of the district court under the federal interpleader statute, 28 U.S.C. § 1335, requires us to decide whether, arraying the various personal injury claims arising out of a motor vehicle accident against the available insurance coverage, there is sufficient "adversity" between the relevant claimants, see 28 U.S.C. § 1335(a)(1), to sustain federal jurisdiction. For the reasons that follow, we agree with the district court that there is not; hence we will affirm.

## I. FACTS AND PROCEDURAL HISTORY

On October 25, 1987, Lemuel Waters, Jr. was driving his automobile, with Brenda Trawick as a passenger, when it collided with an uninsured vehicle owned by Robert Jenkins and driven by Charles Johnson. Anthony Johnson was a passenger in Jenkins' vehicle. Waters and Trawick were injured. Waters' car was covered by an insurance policy issued by CNA that provided identical liability and uninsured motorist coverage limits of $15,000 per person and $30,000 per occurrence. The policy also included set-off clauses limiting CNA's total exposure—whether paid out under the liability portion of the policy, the uninsured motorist portion, or some combination of the two—to $15,000 per person and $30,000 per occurrence.[1]

Waters and Trawick attempted to settle their uninsured motorist claims for personal injuries with CNA. When this effort failed, they made a demand for arbitration and appointed an arbitrator pursuant to the arbitration clause of the policy.[2] As required, CNA also appointed an arbitrator. When the two arbitrators could not agree on a neutral third, Waters and Trawick filed a petition to compel appointment of the arbitrator in the Court of Common Pleas for Philadelphia County. On CNA's motion, this action was removed to the

---

1. Specifically, the "Limit of Liability" section of the uninsured motorist portion of the policy provides for the set-offs as follows:

   The limit of liability [$15,000/person; $30,000/occurrence] shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
   1. Covered persons;
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
   1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A [liability coverage].
   . . . .
   Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A [liability coverage].

2. The arbitration clause of the policy is applicable only to uninsured motorist claims (not liability claims) and provides as follows:

If we and a covered person do not agree:
   1. Whether that person is legally entitled to recover damages under this Part; or
   2. As to the amount of damages;
either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction
. . . .
A decision agreed to by two of the arbitrators will be binding as to:
   1. Whether the covered person is legally entitled to recover damages; and
   2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

district court for the Eastern District of Pennsylvania. On the motion of Waters and Trawick, however, the district court remanded the action to the Court of Common Pleas, which ultimately granted their motion and appointed an arbitrator.[3]

While Waters' and Trawick's petition was bouncing between the state and federal courts, two related and significant events occurred. First, Trawick filed a separate tort action in state court against Waters seeking damages for personal injury under the liability portion of Waters' policy with CNA. Second, largely in response to Trawick's suit, CNA filed the present action in the district court for the Eastern District of Pennsylvania. CNA averred in its complaint that, due to a "multiplicity of actions for proceeds," it faced "the possibility of double or multiple liability" (in excess of the $30,000 policy limit) if the various actions were tried separately.[4] CNA therefore petitioned the district court to take jurisdiction of all claims against Waters' policy pursuant to the Federal Interpleader Statute, 28 U.S.C. § 1335, which provides as follows:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

(2) the plaintiff has deposited such money or property or has paid the amount of the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

■■■■ It was not disputed that the value of the policy and the claims against CNA exceeded $500. CNA also demonstrated that the claimants were of diverse citizenship.[5] Furthermore, as required by the statute, CNA deposited $30,000—its per occurrence liability limit under the policy and the set-offs therein—with the court's registry.[6] However, the district court rejected

---

**3.** In a *per curiam* opinion, the Superior Court of Pennsylvania quashed as interlocutory CNA's subsequent appeal of the Court of Common Pleas' order appointing the arbitrator.

**4.** These actions included Waters' and Trawick's uninsured motorist claims, Trawick's liability claim, and possible (but at the time nonexistent) liability claims by Charles Johnson, Anthony Johnson, or Robert Jenkins.

**5.** Whereas complete diversity is a prerequisite for rule interpleader under Fed.R.Civ.P. 22 (stakeholder must be diverse from all claimants), statutory interpleader requires only minimal diversity (at least two claimants must be

diverse, but citizenship of stakeholder is irrelevant). *See State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). In its complaint, CNA satisfied this requirement by averring that Waters is a citizen of Delaware and that the remainder of the claimants, including Trawick, are citizens of Pennsylvania.

**6.** As we discuss *infra,* notwithstanding the plain language of the set-offs in the policy, Trawick disputes whether $30,000 is CNA's maximum liability. According to Trawick, CNA's potential liability may be as high as $45,000. Technically, since the amount of the stake is in dispute,

CNA's contention that the claimants were "adverse" as required by § 1335(a)(1).

■ Although CNA's complaint listed five possible claimants against the policy, *see supra* note 4, the district court pointed out that the statute of limitations had expired without Charles Johnson, Anthony Johnson, or Robert Jenkins filing a claim. CNA argued, in the alternative, that Waters' and Trawick's claims alone were "adverse," because each was seeking $15,000 in uninsured motorist benefits and Trawick was seeking an additional $15,000 under the liability coverage. Their aggregate claims, according to CNA, thus totalled $45,000 and exceeded the policy's per occurrence set-off limit of $30,000. The district court rejected this argument reasoning that, due to the per person set-off in the policy, Trawick's total recovery under the uninsured motorist coverage and the liability coverage would be limited to $15,000, even if she proceeded in two separate actions. Thus, the district court calculated, the maximum that Waters and Trawick could recover was $15,000 each; a total that is equal to the per occurrence set-off limit of $30,000. In light of this calculus, the district court held that Waters and Trawick were not "adverse" and issued an order dismissing CNA's complaint for lack of subject matter jurisdiction. CNA appealed from this order. Because the district court's dismissal for lack of subject matter jurisdiction raises a question of law, our review is plenary. *Centifanti v. Nix,* 865 F.2d 1422, 1429 (3d Cir.1989).

## II. DISCUSSION

In our view, the analysis and judgment of the district court were entirely correct. It is necessary, however, to explicate one facet of this case that was not fully considered by the district court and that only became evident at oral argument before this court.

■ CNA admits on appeal that Charles Johnson, Anthony Johnson, and Robert Jenkins are not potential claimants against the policy. CNA thus recognizes that "adversity," for purposes of the federal interpleader statute, must be judged solely by reference to the claims of Waters and Trawick. Notwithstanding the district court's seemingly irrefutable reasoning that the per person set-off in the policy will limit Trawick's recovery to $15,000, CNA continues to maintain on appeal that Trawick actually may recover $30,000, thus rendering Trawick's and Waters' claims "adverse." CNA bases this reasoning on Trawick's statement that she intends to argue, in whichever court ultimately hears her uninsured motorist and liability claims, that the set-offs in the policy are void as against public policy.[7] Trawick raises a serious issue, *see Nationwide Mutual Insurance Co. v. Hampton,* No. 89–4386, 1990 WL 87276 (E.D.Pa. June 18, 1990) (holding similar offset provision void as against public policy to the extent that it operated to reduce available underinsured motorist benefits below statutorily mandated $15,000 floor), and it is one that CNA apparently would prefer to have resolved by a federal court. The question before us, then, is whether, assuming that Trawick may be successful in having the set-offs declared void as against public policy, such a possibility renders Waters and Trawick "adverse." For the reasons set forth below, we think that it does not.

As we have explained, there are two set-offs in Waters' policy with CNA. *See supra* note 1. The first limits any one

CNA should have paid into the court registry the highest amount for which it ultimately may be liable. *See* 3A J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 22.10 (19th ed. 1989). We could affirm the district court's denial of statutory interpleader jurisdiction on this ground. The law is clear, however, that CNA would be permitted to cure this defect by making an additional deposit with the court registry. *Id.* Hence, we will pass over the issue of the amount of the stake for now and move on to consider the district court's reason for denying jurisdiction—i.e., that the claimants are not "adverse."

**7.** We note that Trawick does not claim that the $15,000 and $30,000 limits *separately* applicable to the uninsured motorist and liability coverages are against public policy. Trawick intends to challenge only the policy's per individual and per occurrence set-offs that limit *total* recovery from both coverages.

person's total recovery from the uninsured motorist and liability coverages to $15,000. The second limits the total recovery of all claimants from a single occurrence to $30,000. If and when these two set-offs are challenged, one of four theoretically possible outcomes will result. First, both set-offs may be declared not to be against public policy and valid. Second, both set-offs may be declared to be against public policy and invalid. Third, the $30,000 per occurrence set-off may be declared valid but the $15,000 per individual set-off declared invalid. Fourth, the $30,000 per occurrence set-off may be declared invalid but the $15,000 per individual set-off declared valid.

The impact of each theoretically possible result on the "adversity" requirement for federal interpleader is as follows:

1) If both set-offs are declared valid, then the analysis of the district court clearly applies. Waters and Trawick could only recover $15,000 each for a total equal to the per occurrence limit of $30,000. In other words, Trawick and Waters still would not be "adverse."

2) If both set-offs are declared invalid, then Trawick will be able to recover up to $30,000, with Waters still able to receive $15,000, for a total of $45,000. If the $30,000 per occurrence set-off is declared invalid, however, the total amount available to satisfy claims under the policy will rise to $60,000 ($30,000 uninsured motorist coverage plus $30,000 liability coverage). Thus, from the perspective of interpleader jurisdiction, the parties still would not be "adverse."

3) Similarly, Waters and Trawick would not be "adverse" if the $30,000 per occurrence set-off, but not the $15,000 per person set-off, were declared invalid. In this case, each could collect only $15,000, for a total of $30,000, against the expanded $60,000 amount available under the policy.

4) If the $30,000 per occurrence set-off is declared valid, but the $15,000 per person set-off is declared invalid, Trawick and Waters will have total claims of $45,000 against a limit of $30,000. In this event,

and only in this event, would their claims be "adverse."

"[I]f the stakeholder has a bona fide fear of adverse claims, interpleader relief is warranted." See 3A J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 22.08[1] (19th ed. 1989) (and cases cited therein). The question then is whether CNA has a "bona fide fear" that the fourth theoretically possible outcome discussed above actually might occur. We believe that CNA does not.

As a procedural matter, it is clear that the validity of both the $15,000 per person and $30,000 per occurrence set-offs will have to be challenged simultaneously, regardless of the order in which the uninsured motorist and liability claims are tried. Suppose, for example, that Waters and Trawick proceed with their uninsured motorist arbitration first. Neither will have standing to challenge the set-offs on public policy grounds, since the maximum each could receive under the separate limits of the uninsured motorist coverage is $15,000. If each is awarded $15,000, for a total of $30,000, however, Trawick then will have to challenge both set-offs in her suit to collect an additional $15,000 under the liability coverage.

Conversely, suppose Trawick brings her liability suit first and is awarded $15,000. In the subsequent joint arbitration of Waters' and Trawick's uninsured motorist claims, both set-offs again will be challenged on public policy grounds. Trawick will have to challenge the $15,000 per person set-off since she has already collected $15,000. Waters, fearing that Trawick's public policy argument will permit her to collect up to $30,000 and crowd-out his recovery, will be forced to challenge the $30,000 per occurrence set-off. In short, whatever the sequence of the suits, in the end both set-offs will be challenged in the same forum as against public policy.

As a substantive matter, we cannot predict whether Trawick and Waters will be successful in having the set-offs declared to be against public policy and invalid. However, we discern no reason why a court, presented with challenges to both

set-offs, would declare invalid the $15,000 per person set-off while upholding the validity of the $30,000 per occurrence set-off (or *vice versa*). Simply put, the public policy considerations relevant to the two set-offs are identical, and therefore, whatever the result, we think it obvious that both set-offs would stand or fall together.[8] In other words, we believe that the first and second hypotheticals discussed above (both set-offs declared valid or both declared invalid) are the only ones that CNA has a "bona fide" reason to fear. As we have noted, the claims of Trawick and Waters are not "adverse" under either of these two hypotheticals. Federal interpleader jurisdiction therefore is inappropriate.

## III. CONCLUSION

The district court correctly held that, due to the set-offs in the policy, the claims of Trawick and Waters are not "adverse." We find additionally that "adversity" will not be established even if both set-offs are declared void as against public policy. We thus will affirm the order of the district court dismissing CNA's motion to invoke subject matter jurisdiction under the federal interpleader statute.

---

**8.** The rationale of the court in *Nationwide Mutual Insurance Co. v. Hampton*, No. 89–4386 1990 WL 87276 (E.D. Pa. June 18, 1990), *see supra* at 250, the only case we are aware of that has voided an underinsured motorist set-off on public policy grounds, was that a set-off could not operate to reduce available benefits below the statutorily prescribed minimums. Pennsylvania law requires all motor vehicle insurance policies issued in the state to provide uninsured and underinsured motorist coverage for a single accident of no less than $15,000 per person and $30,000 for two or more persons, *see* 75 Pa. Cons.Stat.Ann. §§ 1702, 1731(a), 1734 (Purdon 1990). Since both set-offs in CNA's policy reduce coverage below the statutory minimums, *Nationwide* suggests that, if indeed one of the set-offs is contrary to public policy, then both are.